1

2

3

4

5

6

7     UNITED STATES DISTRICT COURT
      WESTERN DISTRICT OF WASHINGTON
8     AT TACOMA

9     MULTICARE HEALTH SYSTEM,                    Case No.

10            Plaintiff,                          COMPLAINT TO VACATE
          v.                                      ARBITRATION AWARD
11
      WASHINGTON STATE NURSES
12    ASSOCIATION,

13            Defendant.

14

15                          **I.    PARTIES**

16        1.    MultiCare Health System (MultiCare) is a Washington not-for-profit healthcare

17    organization, with its principal place of business in Tacoma, Washington.  MultiCare operates

18
      medical facilities throughout the state of Washington, including Tacoma General Hospital (TGH)
19
      in Tacoma, Washington.  MultiCare is involved in an industry affecting interstate commerce.
20

21        2.    The Washington State Nurses Association (WSNA) is a labor union that

22    represents registered nurses (RNs) employed by MultiCare, including RNs employed at TGH.

23    WSNA was also a party to the arbitration that is the subject of this Complaint.

24
          3.    MultiCare and WSNA were parties to a Collective Bargaining Agreement (CBA)
25
      effective June 2013 through December 2015.  A true and correct copy of the relevant portions of
26

COMPLAINT TO VACATE ARBITRATION AWARD
Case No.                    - 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1 the CBA is attached to this Complaint as **Exhibit A**.  MultiCare and WSNA are currently

2 engaged in negotiations regarding a successor CBA.

3     4.    MultiCare and WSNA are also parties to a Settlement Agreement entered into

4 September 12, 2013 (the Settlement Agreement).  A true and correct copy of the Settlement

5 

6 Agreement is attached to this Complaint as **Exhibit B**.

7 **II.      JURISDICTION**

8     5.    MultiCare files this complaint to vacate an arbitration award arising under the

9 CBA and the Settlement Agreement.  This Court has jurisdiction to review and vacate the

10 arbitration award pursuant to § 301(a) of the Labor Management Relations Act (LMRA), 29

11 U.S.C. § 185(a), and the Federal Arbitration Act (FAA), 9 U.S.C. § 10.

12 

13 **III. VENUE**

14     6.    Venue is proper in the Court pursuant to Section 301(a) of the Act, 29 U.S.C. §

15 185(a), in that this Court has jurisdiction over the parties.  Venue is also appropriate pursuant to

16 28 U.S.C. § 1391(b) in that the events giving rise to this Complaint occurred in this District.

17 **IV.      FACTUAL BACKGROUND**

18     7.    Pursuant to the parties' CBA, RNs at TGH are entitled to a 15-minute rest break

19 for every four hours worked.  When an RN misses his or her 15-minute rest break, he or she is

20 required to record the missed break in TGH's Kronos timekeeping system and the RN is

21 

22 compensated for that missed break in an amount representing 15 extra minutes of pay (at time

23 and a half if the RN works overtime).

24     8.    TGH is composed of approximately 30 different units or departments, each of

25 which has established its own practices, policies, and procedures to ensure that RNs receive their

26 

COMPLAINT TO VACATE ARBITRATION AWARD
Case No.     - 2

1    15-minute rest breaks.  Approximately half of TGH's units utilize what is known as "the break

2    buddy system" as a method for providing RNs with their breaks.  Pursuant to the break buddy

3    system, RNs work in pairs or as teams to relieve each other for their rest breaks.

4          9.        In October 2010, WSNA filed a lawsuit against MultiCare, asserting that RNs at

5    TGH were not being paid correctly for missed rest breaks.  MultiCare compensated RNs for

6    missed rest breaks at straight time, a practice that the Department of Labor and Industries (L&I)

7    had previously represented to MultiCare as the correct method for computing payment for

8    missed breaks.  The Washington Court of Appeals had also issued a decision with a holding

9    consistent with L&I's and MultiCare's position.  However, in late 2012, the Washington

10   Supreme Court reversed that Court of Appeals decision and held that RNs must be compensated

11   at an overtime rate of time and a half for missed rest breaks under certain circumstances.  That

12   decision became final in 2013, and the change in the law served as the impetus for MultiCare to

13   engage in settlement discussions with WSNA.  WSNA and MultiCare engaged in direct

14   negotiations, exchanging proposals that ultimately led to the Settlement Agreement.

15

16   10.        The following provision of the parties' Settlement Agreement is at issue in this

17   dispute:

18

19

20          1.      MultiCare's Obligations.  MultiCare agrees to both
                    retroactive and prospective relief for the benefit of the
21                  Represented Nurses.

22                  a.      Missed Breaks Process to be put into effect by or
                            before the completion of MultiCare's scheduled
23                          system wide introduction of the Kronos time-
                            keeping system, currently scheduled to begin in
24                          2014:

25

26

81048786.1 0023502-00121

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1
2
3
4
5
6
7
8
9

                        (1)     Managers of each department or unit of Tacoma General Hospital and Good Samaritan Hospital will adopt mechanisms, practices or policies that assure each Represented Nurse is relieved of patient care duties for a 15-minute rest period every four hours of work.  In no case shall the mechanism used result in a violation of the staffing plan established by the Nurse Staffing committee. Represented Nurses will work cooperatively to implement whatever mechanisms are used in each department or unit.  Except in exigent circumstances, RNs will accept a rest break when relief is provided and, in the RN's judgment, patient needs will be met and is consistent with the Nurse Practice Act.

10
Exhibit B, § 1.

11
      11.    The Settlement Agreement further provides:

12
13
14
The interpretation and enforcement of this Agreement shall be governed by the laws of the State of Washington.  Any disputes arising out of this Agreement shall be submitted to the grievance process in the applicable collective bargaining agreement, culminating in final and binding arbitration, if necessary.

15
Exhibit B, § 3(e).

16
      12.    The parties' CBA provides:

17
<u>Arbitration.</u>

18
19
20
21
22
23
24
25
26
If the grievance is not settled on the basis of the foregoing procedures, and if the grievant and the Association have complied with the specific time limitations specified in Steps 1, 2, 3 and 4 herein, the Association may submit the issue in writing to arbitration within fourteen (14) calendar days following the receipt of the written reply from the Director of Labor Relations or designee.  If the Hospital and the Association fail to agree on an arbitrator, a list of eleven (11) arbitrators shall be requested from the Federal Mediation and Conciliation Service.  The parties shall thereupon alternate in striking a name from the panel until one name remains.  The person whose name remains shall be the arbitrator.  Prior to proceeding to arbitration, the Association will fully identify and describe the issue to be submitted to the Arbitrator.  The arbitrator's decision shall be final and binding on all parties.  The arbitrator shall have no authority to add to, subtract from, or otherwise change or modify the provisions of this

COMPLAINT TO VACATE ARBITRATION AWARD
Case No.         - 4

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1       Agreement, but shall be authorized only to interpret existing
    provisions of this Agreement as they may apply to the specific
2       facts of the issue in dispute.  The Arbitrator shall have no authority
    to award punitive damages.  Any dismissal of a grievance by the
3       Arbitrator, whether on the merits or on procedural grounds, shall
    bar any further litigation of the issue in dispute.  Each party shall
4       bear one-half (1/2) of the fee of the arbitrator for an Award issued
    on a timely basis and any other expense jointly incurred incident to
5       the arbitration hearing.  All other expenses, including but not
    limited to legal fees, deposition costs, witness fees, and any and
6       every other cost related to the presentation of a party's case, shall
    be borne by the party incurring them, and neither party shall be
7       responsible for the expenses of witnesses called by the other party.

8   Exhibit A, Art. 14.3.

9       13.    On April 11, 2014, WSNA filed the grievance underlying this dispute, asserting

10   that TGH violated Section 1(a) of the Settlement Agreement.  WSNA's Grievance was

11   premature, as MultiCare's obligations under Section 1(a) of the Settlement Agreement did not

12   take effect until the implementation of its Kronos timekeeping system at TGH on August 24,

13   2014.  Nevertheless, representatives of TGH met with representatives of WSNA for "Step Two"

14   and "Step Three" meetings, pursuant to the grievance process outlined in the parties' CBA

15   (Exhibit A, Art. 14.3).

16       14.    When the Parties were unable to resolve WSNA's grievance, WSNA requested

17   arbitration under Article 14.3 of the CBA.

18       15.    The Arbitrator held a hearing, in phases, on August 17-18, 2015, September 24-

19   25, 2015, and October 19, 2015.  A true and correct copy of the hearing transcript is attached to

20   this Complaint as **Exhibit C**.  True and correct copies of the hearing exhibits are attached to this

21

22   Complaint as **Exhibit D.**

23       16.    The Parties submitted their post-hearing briefs to the Arbitrator on December 2,

24   2015.  True and correct copies of the Parties' briefs are attached to this Complaint as **Exhibit E**.

25

26

COMPLAINT TO VACATE ARBITRATION AWARD
Case No.          - 5

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1       17.    On December 28, 2015, the Arbitrator issued an Opinion and Award (the

2   Award). A true and correct copy of the Award is attached to this Complaint as **Exhibit F**.

3   Counsel for MultiCare received that Award on December 31, 2015.

4
5       18.    The Arbitrator defined the issue as the following: "Did the employer violate the

6   settlement agreement by failing to adopt and provide mechanisms, practices or policies

7   procedures that would give the opportunity and means for the represented nurses to take their

8   rest breaks as provided for in the agreement? If so, what is the appropriate remedy?" Exhibit F,

9   p. 2.

10
11      19.    The Arbitrator correctly noted that the Settlement Agreement was the result of

12  "vigorous, thorough and extensive negotiations," (Exhibit F, p. 6), and made several explicit

13  findings about specific aspects of those negotiations. The Arbitrator expressly found, with

14  respect to the Parties' negotiations regarding use of the buddy system as a means to provide RNs

15  with their breaks:

16          MultiCare did not abandon its position that the buddy system is a
            viable and workable solution to the break problem, and therefore

17          one of the potential mechanisms available. Nor did the WSNA
            accede to the explicit inclusion of this system as a means to resolve

18          their continuing concerns regarding rest breaks. <u>It remained,
            unspecified, as one of the possible choices a department or unit</u>

19          <u>could choose to adopt and utilize in providing the requisite rest
            breaks.</u>

20  Exhibit F, p. 7 (emphasis added).

21      20.    The Arbitrator acknowledged that the break buddy system was not barred by the

22  Settlement Agreement, concluding that "the inclusion of 'mechanisms practices or policies' [in

23  the Settlement Agreement] was the concession that would allow for the employer to maintain

24  and continue the application of this [break buddy] system." Exhibit F, p. 28.

25
26

COMPLAINT TO VACATE ARBITRATION AWARD
Case No.           - 6

81048786.1 0023502-00121

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

1    21.    Despite the Arbitrator's express findings that the Settlement Agreement did not

2    bar the break buddy system, the Arbitrator nonetheless directed that TGH cease using the break

3    buddy system no later than the pay period nearest to January 15, 2016.

4    22.    The Arbitrator also made an express finding of the negotiating history regarding

5    the possibility of staffing changes as a result of the settlement agreement:

6              Further, the parties, in attempting to reach the settlement,
               exchanged a number of proposals regarding staffing.  WSNA
7              sought language that would generate staffing increases if certain
               criteria were met.  <u>MultiCare, according to testimony, was adamant
8              that they would not agree to anything that would mandate
               increased staffing.</u>  The WSNA was successful in including a
9              protection against filing of the terms of the staff and committees
               staffing plan brackets (*sic*).
10
     Exhibit F, p. 7 (emphasis added).  None of WSNA's proposals that would have mandated
11
     staffing increases were included in the Settlement Agreement.
12
     23.    Despite the Arbitrator's express findings that the Settlement Agreement was
13
     negotiated to not require staffing increases, the Arbitrator nonetheless directed that in
14
     determining future schedules, each unit shall assign a "reserve or float nurse" with the specific
15
     assignment of providing relief for rest breaks.  MultiCare will not be able to comply with this
16
     mandate without hiring additional staff to fulfill those roles.  Again, the Arbitrator directed that
17
     such schedules be effective no later than the pay period nearest to January 15, 2016.
18
     24.    The Arbitrator further directed that TGH's staffing committee meet to discuss a
19
     mutually acceptable process to resolve the issues addressed in this award.  He further mandated
20
     that in the event the Parties are unable to reach an acceptable solution by June 30, 2016, the
21
     Parties must submit their "last, best position" to the Arbitrator and that the Arbitrator would
22
     select one position without modification.  The Arbitrator purported to retain jurisdiction to
23
     resolve any dispute arising under the Award.
24

25

26

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

81048786.1 0023502-00121

1    25.    The Arbitrator's decision fails to draw its essence from the CBA and the

2  Settlement Agreement, by ignoring or contradicting the plain language and intent of the Parties'

3  agreements in a variety of respects, as follows:

4        a.    The Arbitrator's Award prohibits a break mechanism -- the break buddy

5

6  system -- that, according to the Arbitrator's own findings, was specifically allowed by the

7  Settlement Agreement.

8        b.    The Arbitrator's Award mandates staffing increases, when, according to

9  the Arbitrator's own findings, the Settlement Agreement was specifically negotiated by

10  the Parties to not require staffing increases.

11        c.    The Arbitrator's Award violates the CBA by requiring new schedules in a

12

13  timeframe inconsistent with the CBA's provisions.  Specifically, the Arbitrator required

14  new schedules assigning break relief nurses to be prepared no later than the pay period

15  nearest to January 15, 2016.  That pay period began on January 10, 2016.  Under the

16  CBA, MultiCare must provide notice of any schedule change "prior to the 10th day

17  preceding the day on which the schedule becomes effective." (Exhibit A, Art. 8.6).  Such

18  notice was not possible, given that MultiCare did not even receive the Award until

19  December 31, 2015, the last business day before the New Year's holiday.

20        d.    The Arbitrator unilaterally attempted to bestow upon himself continued

21  jurisdiction over this case without the Parties' consent and contrary to the Parties'

22

23  agreements.  Pursuant to the CBA, the Settlement Agreement, and generally accepted

24  principles of labor law, the Arbitrator may only resolve the grievance before him, and the

25  Arbitrator's decision is "final."  The Arbitrator is only authorized "to interpret existing

26

COMPLAINT TO VACATE ARBITRATION AWARD
Case No.                    - 8

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1    provisions of this agreement as it may apply to the specific facts of the issue in dispute."

2    Exhibit A, Art. 14.3.  Such limitations preclude the Arbitrator from reserving to himself

3    the jurisdiction to resolve issues yet to be arrived at, much less facts that are yet

4    unknown.

5

6    26.    The Arbitrator's Award is also contrary to public policy, as it is contrary to State

7    law.  RCW 70.41.410 *et seq.* requires that TGH's staffing plan be subject to the ultimate

8    approval of TGH's Chief Executive Officer.  The Award would purport to bypass that approval,

9    instead making the staffing committee's plan subject to the Arbitrator's approval.

10

11                          **V.  GROUNDS FOR RELIEF**
                            **COUNT ONE**

12

13    27.    MultiCare incorporates by reference paragraphs 1 through 26, above, as if fully

14    set forth herein.

15    28.    The Arbitrator exceeded the authority granted him by the CBA and the Settlement

16    Agreement and failed to draw his award from the essence of the Parties' agreements by in at

17    least two instances ignoring or contradicting the plain language and acknowledged intent of the

18    Settlement Agreement.

19    29.    The Arbitrator exceeded the authority granted him by the CBA and the Settlement

20    Agreement and failed to draw his award from the essence of the Parties' agreements by

21    prescribing a remedy that violated the plain terms of the CBA.

22

23    30.    The Arbitrator exceeded the authority granted him by the CBA and the Settlement

24    Agreement and failed to draw his award from the essence of the Parties' agreements by

25    abrogating to himself jurisdiction to hear a dispute that has not yet arisen.

26

COMPLAINT TO VACATE ARBITRATION AWARD
Case No.                        - 9

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    31.    The Arbitrator's Award is contrary to public policy insofar as it violates RCW

2    70.41.410 *et seq.*.

3    32.    The Award should be vacated in its entirety.

4                          **VI.   PRAYER FOR RELIEF**

5

6    WHEREFORE, MultiCare prays for relief as follows:

7    1.    An order vacating the Arbitrator's Award, discussed above; and

8    2.    For such other relief as the Court may deem just and proper.

9

DATED: January 21, 2016                    STOEL RIVES LLP

10

11

12                                         Timothy J. O'Connell, WSBA No. 15372
                                           Karin D. Jones, WSBA No. 42406
13                                         Stoel Rives LLP
                                           600 University Street, Suite 3600
14                                         Seattle, WA  98101-4109
                                           (206) 624-0900
15                                         tim.oconnell@stoel.com
                                           karin.jones@stoel.com
16                                         Attorneys for Plaintiff MultiCare Health System

17

18

19

20

21

22

23

24

25

26

COMPLAINT TO VACATE ARBITRATION AWARD
Case No.                        - 10