UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MULTICARE HEALTH SYSTEM,<br><br>    Plaintiff,<br><br>v.<br><br>WASHINGTON STATE NURSES ASSOCIATION,<br><br>    Defendant. | CASE NO. C16-5053BHS<br><br>ORDER REQUESTING ADDITIONAL BRIEFING AND RENOTING MOTIONS |

This matter comes before the Court on Defendant Washington State Nurses Association's ("WSNA") motion for summary judgment to confirm award (Dkt. 15) and Plaintiff MultiCare Health System's ("MultiCare") motion for summary judgment to vacate award (Dkt. 29). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby requests additional briefing as follows:

**I. PROCEDURAL HISTORY**

On January 21, 2016, MultiCare filed a complaint against WSNA seeking to vacate an arbitrator's decision and award. Dkt. 1 ("Comp.").

ORDER - 1

On May 12, 2016, WSNA filed a motion for summary judgment to confirm the decision.  Dkt. 15.  On May 31, 2016, MultiCare responded.  Dkt. 23.  On June 6, 2016, WSNA replied.  Dkt. 26.

On June 16, 2016, MultiCare filed a motion for summary judgment to vacate the decision.  Dkt. 29.  On July 5, 2016, WSNA responded.  Dkt. 31.  On July 8, 2016, MultiCare replied.  Dkt. 32.

## II. FACTUAL BACKGROUND

In October 2010, WSNA filed a complaint against MultiCare asserting that Registered Nurses ("RNs") at Tacoma General Hospital ("TGH") were not properly compensated for missed rest breaks.  Comp. at ¶ 9.  In late 2012, the Washington Supreme Court held that, under certain circumstances, RNs must be compensated at time and a half for missed breaks.  *Id*.

On September 12, 2013, the parties entered into a settlement agreement.  *Id*., Exh. B ("Settlement").  MultiCare agreed to "adopt mechanisms, practices or policies that assure each Represented Nurse is relieved of patient care duties for a 15-minute rest period every four hours of work."  *Id*. at 1.

MultiCare and WSNA also entered into a Collective Bargaining Agreement ("CBA") effective June 2013 through December 2015.  Dkt. 1, Exh. A.  Relevant to this matter, the CBA provides that "[a]ll nurses shall be allowed a paid rest period of fifteen (15) minutes for each four (4) hours of working time."  *Id*. § 8.5.

On April 11, 2014, WSNA filed the grievance underlying this matter.  Comp. at ¶ 13.

The parties were unable to resolve the issue, and WSNA requested arbitration under Article 14.3 of the CBA.  *Id*.  The arbitrator held hearings in phases and issued a final decision on December 28, 2015.  *Id.*, Exh. F.  Because the parties were unable to agree on an issue statement, the arbitrator defined the issues as follows:

> Did the employer violate the settlement agreement by failing to adopt and provide mechanisms, practices or policies procedures that would give the opportunity and means for the represented nurses to take their rest breaks as provided for in the agreement? If so, what is the appropriate remedy?

*Id*. at 2.

With regard to the liability portion of the parties' dispute, MultiCare appears to concede it has failed to implement an adequate system for rest breaks.  MultiCare opened the hearing by stating that "the evidence will show that [it] takes very seriously the importance of nurses getting rest and relief and that it does have practices and policies in place to ensure that they do so." Dkt. 1, Exh. C at 19:2-5.  WSNA disagreed and specifically contests MultiCare's use of a system commonly referred to as the "buddy system."  This system essentially requires a separate on-duty nurse to cover the needs of the patients assigned to the nurse who is on break.  Thus, the buddy nurse will assume the obligations and patient care duties of the nurse on break.  The evidence shows that this system does not provide the required rest breaks in some units of the hospital.  For example, the arbitrator found as follows:

> The employer argues that the buddy system is an acceptable way for nurses to receive their rest breaks. Apparently, the employer is satisfied with a hospital-wide 13% missed breaks and considers this number to equate to a rare occurrence with the required monetary penalty of overtime pay.

ORDER - 3

*Id*. at 30.  Moreover, "[t]he majority of missed breaks (88.76%) occurred in either the Emergency Department (60.59%) or the Birth Center (28.17%)." *Id*. at 20.  MultiCare does not appear to challenge the arbitrator sustaining the grievance on these facts.

MultiCare, however, challenges the arbitrator's remedies.  In addition to sustaining the grievance, the arbitrator directed as follows:

> 2. In order to assure that each nurse receives the rest breaks established by the Settlement Agreement, the hospital shall, no later than the pay period nearest to January 15, 2016, cease from using the buddy system as a means to provide rest breaks.
> 3. When determining future schedules, each unit or department, for each shift, shall staff, schedule, and assign a nurse to serve as a reserve or float nurse with the precise assignment of relieving other scheduled nurses for their authorized breaks. Such schedules shall be effective no later than the pay period nearest to January 15, 2016.
> 4. The staffing committee, or a sub-committee comprised of an equal number of represented nurses and nurse management, shall, within 30 days of the date of this decision, convene to discuss and determine a mutually acceptable process to resolve the issue(s) raised herein regarding compliance with the Settlement Agreement. Any process or method shall not violate or change the established staffing plan as it relates to the ratio of nurse to patient. The committee shall meet as frequently as necessary to reach a decision.
> 5. In the event the staffing committee or sub-committee fails to arrive at a mutually acceptable solution to the issue(s) by June 30, 2016, the parties will each submit their last, best position to the undersigned, with their rationale in support of their position, either in writing or by presentation in a hearing. The undersigned shall choose one of the two positions, without modification. Such choice shall be final and binding on the parties. Costs of this process will be shared equally.
> 6. The undersigned shall retain jurisdiction to resolve any dispute arising from the implementation of this Decision and Award.

*Id*. at 33.

### III. DISCUSSION

Upon review of the briefs, the Court requests additional briefing on the scope of an arbitrator's potential remedy. Although "an arbitrator's remedy also deserves deference, . . . [it] must still draw its essence from, and is therefore limited by, the collective bargaining agreement." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, Int'l Bhd. of Teamsters*, 989 F.2d 1077, 1081–82 (9th Cir. 1993) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 41 (1987)). The arbitrator's solution should "be rationally derived from some plausible theory of the general framework or intent of the agreement." *Id.* (citing *Desert Palace, Inc. v. Local Joint Executive Bd.*, 679 F.2d 789, 793 (9th Cir. 1982)). "The rational relationship between the remedy and the agreement must be 'viewed in light of [the agreement's] language, its content, and any other indicia of the parties' intention.'" *Id.* (quoting *Desert Palace*, 679 F.2d at 792).

MultiCare argues that one important limitation on an arbitrator's remedy is based on prior negotiations. "The words in such an agreement must be understood in the context of the history of the negotiations which gave rise to their inclusion." *Syufy Enterprises v. N. California State Ass'n of IATSE Locals*, 631 F.2d 124, 126 (9th Cir. 1980). "[E]vidence of prior negotiations is essential to ascertain the rights and obligations of the parties under the current contract." *George A. Hormel & Co. v. United Food & Commercial Workers, Local 9, AFL-CIO*, 879 F.2d 347, 352 (8th Cir. 1989). Moreover, "there is a strong policy not to impose by judicial implication a right that was purposely deleted during the bargaining process." *Id*. (citing *Carbon Fuel Co. v. United*

*Mine Workers*, 444 U.S. 212, 221–22 (1979)).  Thus, courts have vacated remedies that an arbitrator has imposed when the particular remedy was explicitly rejected by a party during prior negotiations.  *See*, *e.g.*, *Phoenix Newspapers*, 989 F.2d at 1082 (vacating arbitrator's award when employer rejected same remedy in prior collective bargaining agreement negotiations); *George A. Hormel*, 879 F.2d at 352 (vacating award for numerous reasons, including the fact that "the right granted by the arbitrator's decision is, essentially, one expressly rejected during an earlier collective bargaining process.").

In this case, MultiCare argues that the arbitrator included two remedies that were specifically rejected during prior negotiations.  First, MultiCare asserts that increasing staffing was explicitly rejected during negotiations of the settlement.  Dkt. 29 at 4–5.  The Court agrees because (1) WSNA does not dispute this assertion and (2) even the arbitrator found that "MultiCare, according to testimony, was adamant [during settlement negotiations] that they would not agree to anything that would mandate increased staffing."  Decision at 7.  The record, however, does not adequately reflect what "increased staffing" entails.  In its post-arbitration brief, MultiCare seems to imply that increase staffing means hiring more nurses.  Dkt. 4 at 50 ("Ordering increased staffing would accomplish little, given that TGH is already trying to hire more staff: but has faced difficulty in doing so due to a shortage of RNs.").  Yet, WSNA, in its post-arbitration brief, proposed the remedy of "offering overtime to incentivize nurses to sign up for extra shifts . . . ."  *Id*. at 124.  The record does not reflect whether the term "increase staffing" means only hiring more nurses or whether TGH could offer current staff additional shifts at overtime pay without increasing staffing.  Moreover, if this term is ambiguous, is it

within the arbitrator's authority to interpret the term in such a way as to impose the remedy of ordering TGH to accept WSNA's proposed remedy of additional overtime shifts?  The Court requests the parties' positions on these issues.

Second, MultiCare asserts that discontinuing use of the buddy system was explicitly rejected during negotiating the settlement.  Dkt. 29 at 4–5.  The Court agrees because (1) WSNA does not dispute the assertion and (2) even the arbitrator found that "MultiCare's unwavering position during the negotiations for the terms of the Settlement Agreement was to continue to be able to use the buddy system for purposes of providing rest breaks."  Decision at 28.  Yet, continued use of the buddy system results in 13% of missed breaks throughout the hospital, with 60.59% of missed breaks in one department alone.  The arbitrator appears to have rejected MultiCare's position that these constitute "rare" occurrences as set forth in the settlement agreement.  Based on this assumed interpretation, the arbitrator enjoined MultiCare from using the buddy system in any unit of the hospital.  Although MultiCare argues the arbitrator exceeded his authority in imposing a remedy, it appears that there is no other adequate remedy at law.

Based on the current record, the Court assumes that the heart of the nurses' grievance was MultiCare's use of the buddy system.  The Court is unable to locate WSNA's grievance that was submitted to arbitration.  However, based on MultiCare's concession that "[t]here are no past damages that have not already been contemporaneously paid to those RNs who have missed rest breaks," Dkt. 4 at 49, the Court assumes that the nurses' basis for the grievance was that they (1) want their breaks and (2) are forced to work in a system that does not allow these breaks.  Yet, MultiCare

1  refuses to discontinue use of the buddy system and has failed to revise the system so that
2  missed rest breaks are rare. MultiCare argued that "there is nothing inherently faulty
3  with the buddy system, and it provides a highly effective and flexible option for many
4  units." Dkt. 4 at 50. The Court agrees to a certain extent because the record does reflect
5  that "NICU RNs — who work more hours than any other unit at TGH and who work
6  with some of the most critical patients in the Hospital — receive more than 97% of their
7  rest breaks by utilizing the buddy system." *Id*. The Court's first question, therefore, is
8  whether the arbitrator exceeded his authority by imposing a hospital-wide ban on a
9  system that is 97% effective in some units. In other words, did the arbitrator impose his
10 own brand of industrial justice by precluding the employer's complete use of a system
11 that produces the seemingly "rare" result of 3% failure in some units?

12      On the other hand, with respect to the units where a significant percentage of
13 breaks are missed, the parties appear to be at an impasse. The record reflects that the
14 parties have been disputing and negotiating revisions to the buddy system for years, and,
15 while it appears to be workable in some circumstances, it appears completely unworkable
16 in other circumstances. Thus, the arbitrator enjoined MultiCare's use of the system.
17 MultiCare objects to this remedy and, instead, proposed the remedy of imposing the
18 "associated requirement that WSNA and bargaining unit members <u>must cooperate</u> with
19 TGH management to ensure the success of implemented practices." Dkt. 4 at 51. Such
20 an outright directive from the Court implicates an interesting area of contract law.

21      The CBA provides that it "shall be subject to all present and future applicable
22 federal and state laws . . . ." CBA § 17.1. In Washington, equitable relief under the

doctrine of specific performance may be ordered when there is no adequate remedy at law or "in other proper circumstances." *King Aircraft Sales, Inc. v. Lane*, 68 Wash. App. 706, 713–714 (1993). Although the CBA precludes punitive damages, it appears to be silent on the issue of imposition of equitable relief. Thus, the question arises whether the arbitrator can enjoin MultiCare from using the buddy system in certain units of the hospital because there is no other adequate remedy at law or because it is proper under the circumstances of this matter.

The Court requests additional briefing on the issues and questions set forth above as well as any other issue that may be relevant.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the parties may file simultaneous response briefs no longer than twenty pages, no later than September 30, 2016, may file simultaneous reply briefs no longer than ten pages, no later than October 7, 2016, and the Clerk shall renote the parties' motions for consideration on the Court's October 7, 2016 calendar.

Dated this 14th day of September, 2016.

BENJAMIN H. SETTLE
United States District Judge