UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MULTICARE HEALTH SYSTEM,

Plaintiff,

v.

WASHINGTON STATE NURSES ASSOCIATION,

Defendant.

CASE NO. C16-5053BHS

ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT AND AFFIRMING IN PART AND VACATING IN PART ARBITRATION DECISION

This matter comes before the Court on Defendant Washington State Nurses Association's ("WSNA") motion for summary judgment to confirm award (Dkt. 15) and Plaintiff MultiCare Health System's ("MultiCare") motion for summary judgment to vacate award (Dkt. 29). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On January 21, 2016, MultiCare filed a complaint against WSNA seeking to vacate an arbitrator's decision and award. Dkt. 1 ("Comp.").

ORDER - 1

1   On May 12, 2016, WSNA filed a motion for summary judgment to confirm the
2   decision. Dkt. 15. On May 31, 2016, MultiCare responded. Dkt. 23. On June 6, 2016,
3   WSNA replied. Dkt. 26.

4   On June 16, 2016, MultiCare filed a motion for summary judgment to vacate the
5   decision. Dkt. 29. On July 5, 2016, WSNA responded. Dkt. 31. On July 8, 2016,
6   MultiCare replied. Dkt. 32.

7   On September 14, 2016, the Court requested additional briefing on certain issues.
8   Dkt. 33. On September 30, 2016, both parties filed supplemental opening briefs. Dkts.
9   34, 35. On October 7, 2016, both parties filed supplemental response briefs. Dkts. 36,
10  37.

## II. FACTUAL BACKGROUND

12  In October 2010, WSNA filed a complaint against MultiCare asserting that
13  Registered Nurses ("RNs") at Tacoma General Hospital ("TGH") were not properly
14  compensated for missed rest breaks. Comp. at ¶ 9. In late 2012, the Washington
15  Supreme Court held that, under certain circumstances, RNs must be compensated at time
16  and a half for missed breaks. *Washington State Nurses Ass'n v. Sacred Heart Med. Ctr.*,
17  175 Wn.2d 822 (2012). The court also held that the hospital's violation of Washington's
18  Minimum Wage Act did not require interpretation of the parties' Collective Bargaining
19  Agreement. *Id*. at 833.

20  Sometime after the *Sacred Heart* decision, WSNA and MultiCare engaged in
21  settlement discussions. On September 12, 2013, the parties entered into a settlement

agreement. *Id.*, Exh. B ("Settlement"). The agreement provides in relevant part as follows:

> Managers of each department or unit of Tacoma General Hospital and Good Samaritan Hospital will adopt mechanisms, practices or policies that assure each Represented Nurse is relieved of patient care duties for a 15-minute rest period every four hours of work. In no case shall the mechanism used result in a violation of the staffing plan established by the Nurse Staffing committee. Represented Nurses will work cooperatively to implement whatever mechanisms are used in each department or unit. Except in exigent circumstances, RNs will accept a rest break when relief is provided and, in the RN's judgment, patient needs will be met and is consistent with the Nurse Practice Act.

*Id.* at 1(a)(1).

MultiCare and WSNA also entered into a Collective Bargaining Agreement ("CBA") effective June 2013 through December 2015. Dkt. 1, Exh. A. Relevant to this matter, the CBA provides that "[a]ll nurses shall be allowed a paid rest period of fifteen (15) minutes for each four (4) hours of working time." *Id.* § 8.5.

On April 11, 2014, WSNA filed the grievance underlying this matter. Dkt. 3 at 82. The grievance states that the nature of the grievance was rest/meal breaks and the cited paragraph of the Settlement. *Id.* The parties were unable to resolve the issue, and WSNA requested arbitration under Article 14.3 of the CBA. *Id.* The Arbitrator held hearings in phases and issued a final decision on December 28, 2015. *Id.*, Exh. F ("Award"). The Arbitrator defined the issue as follows:

> Did the employer violate the settlement agreement by failing to adopt and provide mechanisms, practices or policies procedures that would give the opportunity and means for the represented nurses to take their rest breaks as provided for in the agreement? If so, what is the appropriate remedy?

ORDER - 3

*Id*. at 2.

With regard to the liability portion of the parties' dispute, MultiCare appears to concede that this Court cannot disturb the arbitrator's finding that MultiCare failed to implement an adequate system for rest breaks.  The system at issue is referred to as the "buddy system" and essentially requires a separate on-duty nurse to cover the needs of the patients assigned to the nurse who is on break.  Thus, the buddy nurse will assume the obligations of the breaking nurse.  The evidence shows that this system as implemented does not provide the required rest breaks as contemplated by the Settlement.  For example, the Arbitrator found as follows:

> The employer argues that the buddy system is an acceptable way for nurses to receive their rest breaks. Apparently, the employer is satisfied with a hospital-wide 13% missed breaks and considers this number to equate to a rare occurrence with the required monetary penalty of overtime pay.

*Id*. at 30.  Moreover, "[t]he majority of missed breaks (88.76%) occurred in either the Emergency Department (60.59%) or the Birth Center (28.17%)." *Id*. at 20.  MultiCare contends that these facts are inaccurate.  Dkt. 35 at 11 n.7.  MultiCare cites evidence in the record establishing that the Emergency Department does not use the buddy system and cites the Arbitrator's own finding that "[i]n 27 units other than the ED, Birth Center, and MedSurg ICU, nurses receive 93.1% of the rest breaks." *Id*. at 12 (citing Award at 23).  Regardless, MultiCare fails to meaningfully challenge the Arbitrator's decision on liability.

MultiCare, however, challenges the Arbitrator's remedies.  In addition to sustaining the grievance, the Arbitrator directed as follows:

      2. In order to assure that each nurse receives the rest breaks established by the Settlement Agreement, the hospital shall, no later than the pay period nearest to January 15, 2016, cease from using the buddy system as a means to provide rest breaks.

      3. When determining future schedules, each unit or department, for each shift, shall staff, schedule, and assign a nurse to serve as a reserve or float nurse with the precise assignment of relieving other scheduled nurses for their authorized breaks. Such schedules shall be effective no later than the pay period nearest to January 15, 2016.

      4. The staffing committee, or a sub-committee comprised of an equal number of represented nurses and nurse management, shall, within 30 days of the date of this decision, convene to discuss and determine a mutually acceptable process to resolve the issue(s) raised herein regarding compliance with the Settlement Agreement. Any process or method shall not violate or change the established staffing plan as it relates to the ratio of nurse to patient. The committee shall meet as frequently as necessary to reach a decision.

      5. In the event the staffing committee or sub-committee fails to arrive at a mutually acceptable solution to the issue(s) by June 30, 2016, the parties will each submit their last, best position to the undersigned, with their rationale in support of their position, either in writing or by presentation in a hearing. The undersigned shall choose one of the two positions, without modification. Such choice shall be final and binding on the parties. Costs of this process will be shared equally.

      6. The undersigned shall retain jurisdiction to resolve any dispute arising from the implementation of this Decision and Award.

*Id*. at 33.

### III. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). In this case, the facts are undisputed and the parties request only a determination whether the Award should be affirmed or vacated as a matter of law.

ORDER - 5

**B.     Standard of Review**

"It is well-settled that federal labor policy favors the resolution of disputes through arbitration; thus, judicial scrutiny of an arbitrator's decision is extremely limited." *S. Cal. Gas Co. v. Utility Workers Union of Am., Local 132, AFL–CIO*, 265 F.3d 787, 792 (9th Cir. 2001).  Under § 301 of the Labor Management Relations Act, an arbitration award is subject to vacatur only in a "narrow" set of circumstances:

> (1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.

*Id.* at 792–93.

**C.     Essence of the Parties' Agreements**

In this case, MultiCare argues that the Award does not draw its essence from the parties' CBA because it prescribes a remedy that violates the Settlement.  Dkt. 29 at 3–4. Although "an arbitrator's remedy also deserves deference, . . . [it] must still draw its essence from, and is therefore limited by, the collective bargaining agreement." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, Int'l Bhd. of Teamsters*, 989 F.2d 1077, 1081–82 (9th Cir. 1993) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 41 (1987)).  An arbitrator's solution should "be rationally derived from some plausible theory of the general framework or intent of the agreement." *Id.* (citing *Desert Palace, Inc. v. Local Joint Executive Bd.*, 679 F.2d 789, 793 (9th Cir. 1982)). "The rational relationship between the remedy and the agreement must be 'viewed in

light of [the agreement's] language, its content, and any other indicia of the parties' intention.'" *Id*. (quoting *Desert Palace*, 679 F.2d at 792).

"The words in such an agreement must be understood in the context of the history of the negotiations which gave rise to their inclusion." *Syufy Enterprises v. N. California State Ass'n of IATSE Locals*, 631 F.2d 124, 126 (9th Cir. 1980). "[E]vidence of prior negotiations is essential to ascertain the rights and obligations of the parties under the current contract." *George A. Hormel & Co. v. United Food & Commercial Workers, Local 9, AFL-CIO*, 879 F.2d 347, 352 (8th Cir. 1989). Moreover, "there is a strong policy not to impose by judicial implication a right that was purposely deleted during the bargaining process." *Id*. (citing *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 221–22 (1979)). Thus, courts have vacated remedies that an arbitrator has imposed when the particular remedy was explicitly rejected by a party during prior negotiations. *See*, *e.g.*, *Phoenix Newspapers*, 989 F.2d at 1082 (vacating arbitrator's award when employer rejected same remedy in prior collective bargaining agreement negotiations); *George A. Hormel*, 879 F.2d at 352 (vacating award for numerous reasons, including the fact that "the right granted by the arbitrator's decision is, essentially, one expressly rejected during an earlier collective bargaining process.").

In this case, MultiCare argues that the Arbitrator included two remedies that were specifically rejected during prior negotiations. First, the Arbitrator concluded that MultiCare must eliminate the break buddy system. Award at 33. The Arbitrator, however, found in relevant part as follows:

> MutliCare's unwavering position during the negotiations for the terms of the Settlement Agreement was to continue to be able to use the buddy system for purposes of providing rest breaks. Although not specifically written or referenced as part of the final agreement, the inclusion of "mechanisms, practices or policies" was the concession that would allow for the employer to maintain and continue the application of this system. Equally resolute in it's [sic] stance, the WSNA insisted that the buddy system not be a part of the Settlement. As expressly described it was not included.

Award at 28. According to the Arbitrator's own findings, MultiCare explicitly rejected any discontinuation of the buddy system. Thus, under binding law, this remedy does not draw its essence from the CBA because it was explicitly rejected during negotiations of the Settlement. *Phoenix Newspapers*, 989 F.2d at 1082. As such, the parties created a catch-22 situation: MultiCare refuses to discontinue use of a break system that violates the parties' contract, but the Arbitrator is precluded from imposing a remedy that was explicitly rejected during negotiations of the same contract. Regardless of this obvious conundrum, the Court is bound to enforce the binding precedent and vacate the Arbitrator's award as to the preclusion of "using the buddy system as a means to provide rest breaks." Award at 33.

WSNA contends that the award is an interpretation of the contract language instead of a precluded remedy. Dkt. 34 at 8–16. The Court disagrees. The Arbitrator interpreted paragraph 1(a)(1) of the Settlement to mean that MultiCare must adopt "mechanisms, practices or procedures that *assure* each represented nurse is relieved of patient care duties for a 15 minute break for every four hours worked." Award at 28 (emphasis added). If a break is not assured by the employer, then the employer violates the agreement. The Arbitrator concluded that, when using the buddy system, "the time

ORDER - 8

away from work is not really a break." Award at 30. Thus, precluding use of the buddy system is a remedy for such violations. While the Court agrees with WNSA that an Arbitrator has wide discretion in fashioning a remedy, there are simply some things he may not do such as force a remedy upon a party that it explicitly declined to agree to during contract negotiations. *Phoenix Newspapers*, 989 F.2d at 1082.

The Arbitrator, however, may fashion both compensatory and prospective remedies. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("The Supreme Court has held that an arbitrator should be given substantial latitude in fashioning a remedy under a CBA."). For example, it would seem that an appropriate compensatory remedy could be overtime compensation for each buddy break that was taken throughout the hospital because the Arbitrator found that the breaking nurse did not truly receive a break. MultiCare promised to adopt practices and procedures to assure a true break and, according to the Arbitrator, it willfully failed to uphold that promise by the continued use of the buddy system. Compensation for missed breaks was within the fair contemplation of the parties during negotiations as MultiCare even concedes that it "has already compensated RNs for each and every missed rest break." Dkt. 4 at 49. What MultiCare fails to recognize is that it appears the Arbitrator disagrees with MultiCare on what constitutes a missed break. In other words, the Arbitrator has the power to interpret the term "missed break" within the parties' agreements when considering a compensatory remedy.

Similarly, the Arbitrator may fashion appropriate prospective relief to resolve the admitted deficiencies of the buddy system. For example, the Arbitrator can rely on the parties' mutual interest in patient care and impose certain patient care ratios that may only be violated in exigent circumstances. While the Court is unable to locate the full CBA, it would seem that patient care and safety are either implied or express goals for both parties. Moreover, the term "exigent circumstances" is within the parties' agreement as is the condition that "patient needs will be met" on each break. Settlement at 1(a)(1). Thus, if a covering buddy nurse, who would be responsible for both his or her own patients and the breaking nurse's patients, was responsible for at most the specific maximum patient ratio during the break, the breaking nurse's time away from work would seem more likely to be an actual break.[1] Such a remedy would not specifically preclude use of the buddy system, but would limit such use to accomplish the expressed goals of the parties' agreement. In other words, the Arbitrator could probably award a policy defining the term "patient needs are met." Although these decisions are best left to the Arbitrator, the examples highlight the difference between interpretation of the governing agreements and development of an appropriate remedy between the mutual goals expressed in the agreements and positions adamantly defended during negotiations.

---

[1] For example, if the maximum patient ratio for a department is three per nurse, then a nurse with three current patients would be precluded from being a breaking buddy. On the other hand, if the buddy nurse was only assigned one patient and the nurse requiring a break was only assigned one patient, then the buddy nurse could accept the additional patient for the breaking nurse. This solution seems to resolve patient care concerns and provides a "true" break for the nurse.

1       Second, the Arbitrator concluded that MultiCare "shall staff, schedule, and assign

2 a reserve or float nurse with the precise assignment of relieving other scheduled nurses

3 for their authorized breaks." Decision at 33. Similar to the buddy system, the Arbitrator

4 stated that "MultiCare, according to testimony, was adamant [during settlement

5 negotiations] that they would not agree to anything that would mandate increased

6 staffing." *Id*. at 7. The Court requested additional briefing on the interpretation of the

7 term "increased staffing" because the record "does not adequately reflect what 'increased

8 staffing' entails." Dkt. 33 at 6. Based on the parties' responses, the Court concludes that

9 interpretation of the term is a matter for the Arbitrator. It is unclear whether this issue

10 alone is sufficient to vacate the Award, but, because the Court is vacating the Award on

11 the previous issue, the Court simply points out that additional interpretation would assist

12 a reviewing Court in determining whether the remedy derives its essence from the

13 parties' agreements. In other words, additional consideration and discussion linking the

14 remedy to terms of the contract may be helpful for future review.

15     In sum, the Court grants WSNA's motion as to the Arbitrator sustaining the

16 grievance and grants MultiCare's motion vacating the Arbitrator's remedies.

17 **D.   Jurisdiction**

18     MultiCare argues that the Arbitrator improperly retained jurisdiction to "resolve

19 any dispute arising from the implementation of [the] Decision or Award." Decision at

20 33. MultiCare, however, fails to cite any authority in support of its position. While it

21 would seem unreasonable for an arbitrator to retain jurisdiction to resolve every dispute

22 between two parties, it seems reasonable for this arbitrator to resolve any dispute

regarding the implementation of his decision. This conclusion seems especially appropriate when an arbitrator orders the parties to negotiate further. Regardless, the Court vacates the substantive provisions of the remedy, which the Arbitrator retained jurisdiction to resolve. Therefore, MultiCare's argument is moot.

**E.     Public Policy**

"Judicial deference to an arbitrator's remedy is not required where a remedy violates an explicit, well-defined public policy." *Phoenix Newspapers*, 989 F.2d at 1083. "This exception applies where a public policy: (1) is explicit, (2) is well-defined and dominant, and (3) can be satisfactorily demonstrated by reference to laws and legal precedents, instead of looking only to general considerations of supposed public interest." *Id*. However, "courts should be reluctant to vacate arbitral awards on public policy grounds." *Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir. 1995) (citing *Misco*, 484 U.S. at 43).

In this case, MultiCare argues that the Arbitrator's remedy violates the public policy set forth in RCW 70.41.410 *et seq.* Dkt. 23 at 17. The statute and legislative history dictate that a hospital's staffing policy be developed through a joint process involving representatives of the nurses and hospital management. *See* RCW 70.41.410 MultiCare's has failed to show that this is an explicit, well-defined, and dominant public policy. If anything, the statute promotes negotiating an appropriate staffing policy, which the Arbitrator encouraged in his remedy. Therefore, the Court denies MultiCare's motion on this issue.

## IV. ORDER

Therefore, it is hereby **ORDERED** that WSNA's motion for summary judgment to confirm award (Dkt. 15) and MultiCare's motion for summary judgment to vacate award (Dkt. 29) are **GRANTED in part** and **DENIED in part** such that (1) the Arbitrator sustaining the grievance is **AFFIRMED**, (2) the Arbitrator's remedies are **VACATED**, (3) the issue of retaining jurisdiction is moot, and (4) the arbitrator's remedies did not violate public policy.

Dated this 16th day of November, 2016.

BENJAMIN H. SETTLE
United States District Judge